# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

AUSTIN TROUT,

      Plaintiff,

v.   No. Civ. 16-00097 JCH/LAM

ORGANIZACION MUNDIAL DE BOXEO, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

On February 12, 2016, Defendant Organizacion Mundial de Boxeo, Inc. ("WBO") filed a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), contending that a forum selection clause in its Regulations of World Championship Contests ("WBO Regulations") requires this Court to dismiss Plaintiff Austin Trout's action. The Court, having considered the motion, pleadings, briefs, applicable law, and otherwise being fully advised, concludes that Defendant's motion to dismiss should be denied.

**I.    FACTUAL BACKGROUND[1]**

Plaintiff Austin Trout is a professional boxer and longtime resident of Las Cruces, New Mexico. Compl. ¶¶ 1, 3, ECF No. 1-2. The WBO, a boxing sanctioning organization, is a foreign corporation with its principal place of business in San Juan, Puerto Rico. *Id.* ¶¶ 1-2, 10. The WBO's operations as a sanctioning organization are purportedly governed by its Constitution, By-Laws, and Regulations. *Id.* ¶ 13. Under the rules set out in these governing documents, the WBO establishes and recognizes championships in various weight divisions. *Id.* ¶ 14. These

---

[1] In deciding a Rule 12(b)(3) motion, a court may consider facts outside the pleadings, but facts alleged in the complaint are assumed to be true for purposes of deciding the motion, to the extent they are not controverted by the defendant's evidence. *See Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998).

rules also require the WBO to rank professional boxers in each weight division. *Id.* ¶ 15. Pursuant to the WBO Regulations, attached as Exhibit B to Mr. Trout's complaint, the WBO uses these rankings to determine which boxers will have an opportunity to fight for each WBO championship. *Id.*

In 2014, after a lengthy amateur and professional career, Mr. Trout "determined that he would aspire to become the WBO Junior Middleweight Champion." *Id.* ¶ 26. Following "discussions with and approval by the WBO of the opportunity to enter its rankings," Mr. Trout entered the WBO's rankings as the ninth-ranked junior middleweight boxer in November 2014, giving up other potential prospects and career paths as a result. *Id.* ¶ 27. Mr. Trout then "put together a string of victories" and rose steadily through the WBO's rankings, peaking as the WBO's fourth-ranked junior middleweight boxer by June 2015. *Id.* ¶¶ 28-29.

The WBO's Junior Middleweight World Championship was declared vacant on July 31, 2015. *Id.* ¶¶ 31-33 and Ex. G. When a title is declared vacant, the WBO Regulations provide that "the two best available contenders" (specifically, the "two Best Classified Contenders Available as determined by the Championship Committee") for a particular title are guaranteed an opportunity to fight for the title. *Id.* ¶ 33 and Ex. B § 20.

Mr. Trout contends that the two top-ranked contenders in the WBO's Junior Middleweight division were unavailable for a championship fight at the time, and that he would have qualified as one of the "two best available contenders" on the basis of his June 2015 ranking. *Id.* ¶¶ 35-36. Instead of awarding him this valuable opportunity, Mr. Trout asserts that the WBO delivered a knockout blow to his short-term hopes of becoming the WBO's Junior Middleweight Champion by completely removing him from its Junior Middleweight Rankings for July and August 2015, despite that he had never lost a fight during his time as a WBO-ranked

boxer. *See id.* ¶ 37. Mr. Trout alleges the WBO instead improperly elevated Liam "Beefy" Smith to the fourth-ranked position previously held by Mr. Trout, and granted Mr. Smith a championship fight with John Thompson. *Id.* ¶ 38. Mr. Trout did not reenter the WBO's Junior Middleweight Rankings until September 2015. *Id.* ¶ 39.

Mr. Trout asserts that "the WBO disregarded its rules and regulations in exchange for financial payments from [an] English promoter . . . whose financial clout" had induced the WBO to "prevent Mr. Trout from obtaining a deserved title fight." *Id.* ¶ 41. Consequently, Mr. Trout brought suit in the Third Judicial District Court for the State of New Mexico on November 16, 2015, alleging claims of fraud and violation of the New Mexico Unfair Trade Practices Act and seeking damages and injunctive relief. *Id.* ¶¶ 43-69. The WBO removed this action on February 9, 2016. Def.'s Notice of Removal, ECF No. 1. On February 12, 2016, the WBO filed its "Fed. R. Civ. P. 12(b)(3) Motion to Dismiss for Improper Venue" that is presently before the Court. Def.'s Mot. Dismiss, ECF No. 4.

## II.     ARGUMENTS

In support of its motion, the WBO contends that Mr. Trout's case is improperly before the Court because Mr. Trout has violated the forum selection clause contained in Section 35(d) of the WBO Regulations by bringing suit in New Mexico. Def.'s Mot. Dismiss 2, ECF No. 4. Section 35(d) ("the Contract Venue Provision") states:

> These Regulations are to be interpreted in conformity with the Laws of the Commonwealth of Puerto Rico. All WBO Participants agree and consent that the exclusive venue for any or all action in which the WBO is made a party, whether it is to enforce, interpret, or declare the application of these Regulations or to appeal from any determination of the WBO, including, but not limited to a determination of the Complaints and Grievance Committee, may be maintained only in the Superior Court of the Commonwealth of Puerto Rico, or, if applicable, in the U.S. District Court for the District of Puerto Rico.

Compl. Ex. B § 35(d), ECF No. 1-2, at 41. The WBO asserts that a Fed. R. Civ. P. 12(b)(3)

3

motion is the correct procedural mechanism through which a party may seek to enforce a forum selection clause. Def.'s Mot. Dismiss 3 (quoting *K & V Sci. Co., Inc. v. BMW*, 314 F.3d 494, 497 (10th Cir. 2002)) ("A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).") The WBO further asserts that the Contract Venue Provision is mandatory, arguing that the Provision is thus "prima facie valid and should be enforced" unless Mr. Trout can show that enforcement is "unreasonable under the circumstances." *Id.* at 3-5 (quoting *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992)). Finally, the WBO relies upon state court cases from New Mexico, Nebraska, Alabama, and New York in arguing that Mr. Trout "cannot be permitted to avoid application of the [forum] selection clause by picking and choosing the contract provisions he wishes to enforce while ignoring others." *Id.* at 6 (citing *Pub. Serv. Co. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651; *Bedrosky v. Hiner*, 430 N.W.2d 535, 539 (Neb. 1988); *Credit Sales, Inc. v. Crimm*, 815 So.2d 540, 546 (Ala. 2001); *God's Battalion of Prayer v. Miele Assocs.,* 845 N.E.2d 1265, 1267 (N.Y. 2006)).

In response, Mr. Trout contends that he is not bound by the Contract Venue Provision. Noting that the WBO's motion necessarily "presupposes an enforceable contract of some kind," Mr. Trout first asserts that the Contract Venue Provision is illusory because Section 36 of the WBO Regulations gives the WBO the unilateral right to amend the Regulations. Pl.'s Resp. 2, ECF No. 6. Section 36 of the WBO Regulations ("the Amendment Provision") provides:

> The World Championships Regulations may be amended at any time, with respect to any aspect, through an exception or special case, provided the amendment is approved by the majority vote of the World Championship Committee and the Executive Committee. If any of these Rules are determined to be unenforceable, the balance of these Rules shall remain in full force and effect.

Compl. Ex. B § 36, at 22, ECF No. 1-2. Both the World Championship Committee and the

Executive Committee are bodies within the WBO's administrative structure. Compl. Ex. A, at 4-5, ECF No. 1-2. Citing New Mexico case law and Tenth Circuit precedent in the arbitration context, Mr. Trout asserts that, because he is "obviously" not a member of either committee, Pl.'s Resp. 4, ECF No. 6, the Amendment Provision deprives the Contract Venue Provision of the mutuality and consideration necessary to form a contract. *Id.* at 2-5.

Mr. Trout further contends that he is not bound by the Contract Venue Provision because the Provision, by its own terms, applies only to "WBO Participants." *Id.* at 5-6 (citing Compl. Ex. B § 35(d), at 21, ECF No. 1-2). The term "WBO Participant" is defined by Section 36(f) of the WBO Regulations:

> These Regulations apply to all WBO Participants. The term WBO Participant includes any and all person or company who participates in any WBO activity, including, but not limited to any and all current or former WBO World Champions, WBO Regional Champions, or WBO Zone Champions; WBO World Championship contenders or WBO Regional Championship Contenders, or WBO Zone Championship contenders; all WBO World, Regional or Zone ranked or rated boxers; Manager and/or Promoters of any of the foregoing; all WBO Members, and all WBO Officials. . . . All WBO Participants who participate in any WBO sanctioned activity do so on the express condition that such WBO Participant is bound by and subject to these [WBO Regulations].

Compl. Ex. B § 36(f), at 21, ECF No. 1-2. Mr. Trout contends that he does not fall within the definition of a "WBO Participant" because he does not fit within any of the categories listed in Section 36(f). Pl.'s Resp. 6, ECF No. 6. He asserts specifically that he was not a "world, regional, or zone ranked or rated boxer" when his claims arose in August 2015 from the WBO's "den[ial of] the financial opportunity to fight for the WBO Junior Middleweight Title" because the WBO "had removed him [from its rankings] months earlier." *Id.* Arguing that "[t]he law provides that a forum selection clause shall not apply to a fraudulent scheme that occurred while the alleged contract was not in force," *id.* (citing *Armco, Inc. v. N. Atl. Ins. Co., Ltd.*, 68 F. Supp. 2d 330, 338-40 (S.D.N.Y. 1999)), Mr. Trout asserts that "[t]he WBO chose to exclude Mr. Trout

5

from the confines of its alleged 'Contract Venue Provision' at the time it committed the fraud and unfair trade practices that denied [him] the opportunity in August 2015 that should have been his," *id.*

Finally, Mr. Trout asserts that, under Federal Rule of Civil Procedure 12(h), the WBO has waived its ability to contest personal jurisdiction, to seek transfer under 28 U.S.C. § 1404(a), or to seek dismissal on *forum non conveniens* grounds by filing the present Rule 12(b)(3) motion. *Id.* at 7 (citing *United States v. 51 Pieces of Real Prop., Roswell, N.M.*, 17 F.3d 1306, 1314 (10th Cir. 1994)).

In reply, the WBO contends that "[r]egardless of how [Mr. Trout] characterizes his claims, the gist of his lawsuit is that the WBO Regulations . . . conferred certain rights upon him, and that in violating the Regulations, the WBO caused him to miss a lucrative fighting opportunity worth at least $80,000." Def.'s Reply 1, ECF No. 7. Noting that "the sole basis for the damages Plaintiff seeks is [the] WBO's alleged violation of the [WBO] Regulations," *id.* at 2, the WBO relies upon decisions by the Fourth, Fifth, and Seventh Circuits in arguing that Mr. Trout cannot "cherry pick" and use the WBO Regulations as the vehicle for his substantive claims while disavowing the Regulations' Contract Venue Provision, *id.* at 2-5. The WBO argues that Mr. Trout should be equitably estopped from asserting that the Contract Venue Provision is illusory. *See id.* (citing *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004) (holding that a nonsignatory was bound to an arbitration agreement under the doctrine of equitable estoppel); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (same); *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (applying equitable estoppel to bind a signatory to an arbitration agreement with a nonsignatory)).

In response to Mr. Trout's argument that he was not a "WBO Participant" at the time his claims arose, the WBO contends that Mr. Trout's "entire cause of action is based on his status as a WBO Participant" and demands to know how Mr. Trout can "claim the WBO Regulations gave him the rights that he now seeks to enforce" if he was not a "WBO Participant." *Id.* at 5. The WBO asserts that Mr. Trout, as a person who participated in WBO sanctioned activities, whom the WBO ranked, and who continues to pursue fights as a WBO-ranked boxer, was a WBO Participant at the time he filed his Complaint and during the relevant timeframes. *Id.* at 5-6. Finally, the WBO asserts that Mr. Trout's invocation of *Armco Inc.*, 68 F. Supp. 2d 330, is misplaced because Mr. Trout "does not allege that any fraudulent activities preceded the Regulations or that the Contract Venue Provision itself was the product of fraud." *Id.* at 6.

### III. ANALYSIS

#### A. The Court must deny Defendant's Motion to Dismiss for Improper Venue because venue is proper in this Court.

The Tenth Circuit has previously endorsed the use of a motion to dismiss under Fed. R. Civ. P. 12(b)(3) to enforce a forum selection clause. *See*, *e.g.*, *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992) ("A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3)."). In 2013, however, the Supreme Court explicitly held that motions pursuant to Federal Rule of Civil Procedure 12(b)(3) are improper procedural mechanisms for the enforcement of forum selection clauses. *See Atl. Marine Constr. Co., Inc. v. U. S. Dist. Court*, ––– U.S. ––––, 134 S.Ct. 568, 575-579 (2013); *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (acknowledging the Supreme Court's holding).

As made clear by *Atlantic Marine*, Federal Rule of Civil Procedure 12(b)(3) "allow[s] dismissal only when venue is . . . 'improper' in the forum in which [a case] was brought." 134

7

S.Ct. at 577. Since the "federal venue provisions . . . alone define whether venue exists in a given forum[,]" *id.* at 578, resolution of a 12(b)(3) motion "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws," *id.* at 577. Because venue is proper "irrespective of any forum-selection clause" when these requirements are satisfied, *id.* at 578, this Court must rely solely on the relevant federal venue statute in ruling on Defendant's Motion to Dismiss.

The federal statute controlling venue in removed actions is 28 U.S.C. § 1441 (2012). *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-666 (1953); *Lundahl v. Pub. Storage Mgt., Inc.*, 62 F. App'x 217, 218 (10th Cir. 2003) (unpublished). "Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" *Polizzi*, 345 U.S. at 666 (quoting § 1441(a)). Because Defendant removed this case from the Third Judicial District Court in Doña Ana County, New Mexico, this district embraces the place where the present action was pending, and venue is proper in this Court. *See* 28 U.S.C. § 111 (2012) ("New Mexico constitutes one judicial district."); *cf. Polizzi*, 345 U.S. at 666 (determining that venue was proper in the Southern District of Florida, the "district embracing Dade County," where the removed case had been pending). Accordingly, Rule 12(b)(3) does not authorize dismissal of Mr. Trout's claims, and Defendant's Motion to Dismiss must be denied.

### B. The proper mechanism for enforcement of the Contract Venue Provision is a motion to transfer under 28 U.S.C. § 1404(a).

The appropriate mechanism for enforcement of a forum selection clause is either a motion for transfer under 28 U.S.C. § 1404(a) (2012) or a motion to dismiss on *forum non conveniens* grounds. *Atl. Marine*, 134 S.Ct. at 579-80. Determination of the proper motion depends on the forum described by the clause at issue. "Section 1404(a) . . . provides a

8

mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.* at 579. Conversely, a motion to dismiss on *forum non conveniens* grounds is the proper mechanism for enforcement when the relevant clause points to a nonfederal forum. *Id.* at 580. A district court must apply § 1404(a), rather than the doctrine of *forum non conveniens*, to enforce a forum selection clause that points to both federal and nonfederal forums. *See id.* at 575, 581 (holding that the Fifth Circuit had "correctly identified § 1404(a) as *the* appropriate provision" to enforce a forum selection clause mandating that litigation would take place in either the state or the federal district court in Norfolk, Virginia) (emphasis added); 17 James Wm. Moore et al., *Moore's Federal Practice* §111.04[3][a] (3d ed. 2015) ("When a forum selection clause … designates that the action may be brought in either state or federal court, then enforcement may be sought only through a [transfer motion] under § 1404."); *cf.*, *e.g.*, *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009) (citation and quotation marks omitted) (holding that "[t]o the extent that there is an alternative federal forum, the district court lacked the power of dismissal because . . . § 1404(a) superseded the common law doctrine of *forum non conveniens* insofar as transfer to another federal district court is possible").

The Contract Venue Provision at issue in this case points to both the United States District Court for the District of Puerto Rico and the Superior Court of the Commonwealth of Puerto Rico. Consequently, the proper mechanism to enforce the Provision is a motion to transfer under § 1404.

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Where a motion for transfer under § 1404(a) is not based on a valid forum selection clause, the

9

movant "bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991). In deciding whether the movant has met this burden, "a district court considering a § 1404(a) motion must [ordinarily] evaluate both the private interests of the parties and public-interest considerations." *Atl. Marine*, 134 S. Ct. at 574. The Tenth Circuit has previously discussed the factors a district court should take into account when ruling on a § 1404(a) motion:

> [A] district court should consider . . . the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (internal alteration omitted).

In contrast, when a § 1404(a) motion is based on a "contractually valid" forum selection clause, the motion should be granted absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 134 S. Ct. at 581 & n.5. This is both because "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system" and because "the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice.'" *Id.* at 581 (first quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring), then quoting § 1404(a)). A valid forum selection clause demonstrates that the parties have agreed in advance that a specified forum is convenient. *See id.* (quotation marks and citation omitted) ("[A] valid forum-selection clause . . . represents the parties' agreement as to the most proper forum."). Thus, when a plaintiff "def[ies] the forum-selection clause" by bringing suit in a forum not bargained for by the parties, "the plaintiff's choice of forum merits no weight," and "the plaintiff bears the

10

burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581-82. Moreover, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," and may "consider [only] arguments about public-interest factors," such as "the administrative difficulties flowing from court congestion[,] the local interest in having localized controversies decided at home[,] and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6, 582 (internal citation, quotation marks, and alteration omitted). These factors "will rarely defeat a transfer motion." *Id.* at 582.

A district court may transfer a case under § 1404(a) *sua sponte* after giving the parties an opportunity to be heard. *See* Wright & Miller, *supra*, § 3844 (collecting cases). For reasons of judicial efficiency, resolution of this issue is more appropriately addressed early in the case so that the court that will ultimately decide the substantive issues will be the one with familiarity with all proceedings in the case. Neither party, however, has addressed the above private and public interest factors that this Court must consider in deciding a § 1404(a) transfer. Moreover, whether the Contract Venue Provision is valid and binding on the parties is crucial to this Court's determination of "the convenience of the parties" and "the interests of justice" factors. In arguing for and against the validity of the Provision, the parties have cited law from a number of different forums without first conducting a conflict of law analysis. It is possible that the underlying substantive law of all the competing forums is the same, such that the Court may avoid the analysis. *Cf. Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (examining choice of law issues first before determining validity of arbitration agreement). The Court, however, is bereft of the necessary facts, law, and argument needed to resolve the initial choice-of-law questions before it can decide whether the Provision is valid and enforceable and whether

transfer is both convenient to the parties and witnesses as well as in the interest of justice.

For all these reasons, the Court requests the parties brief the choice-of-law issues and above-referenced factors in the requisite transfer analysis. Defendant should file its brief on or before Wednesday, August 24, 2016. Plaintiff should file a response brief on or before September 14, 2016.

**IT IS THEREFORE ORDERED** that Defendant's "Fed. R. Civ. P 12(b)(3) Motion to Dismiss for Improper Venue" (**ECF No. 4**) is **DENIED**. Defendant must file its brief on the issues discussed herein **on or before Wednesday, August 24, 2016**. Plaintiff should file a response brief **on or before Wednesday, September 14, 2016**.

_____
**UNITED STATES DISTRICT JUDGE**