IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

AUSTIN TROUT,

      Plaintiff,

v.                                                                                                             No. Civ. 16-00097 JCH/LAM

ORGANIZACION MUNDIAL DE BOXEO, INC.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

On August 23, 2016, Defendant Organizacion Mundial de Boxeo, Inc. ("WBO") filed an Amended Motion for Transfer of Venue to the District of Puerto Rico (ECF No. 11), seeking an order transferring this case to the District of Puerto Rico because of a forum-selection provision in the Regulations of World Championship Contests ("WBO Regulations"). The Court, having considered the motion, briefs, pleadings, evidence, and applicable law, concludes that the motion should be granted and this case transferred to the United States District Court for the District of Puerto Rico.

**I.      FACTUAL BACKGROUND**

Plaintiff Austin Trout is a professional boxer and longtime resident of Las Cruces, New Mexico. Compl. ¶¶ 1, 3, ECF No. 1-2. The WBO, a boxing sanctioning organization, is a foreign corporation with its principal place of business in San Juan, Puerto Rico. *Id.* ¶¶ 2, 10. The WBO's operations are purportedly governed by its Constitution, By-Laws, and Regulations. *See id.* ¶ 13. Under the rules set out in these governing documents, the WBO establishes and recognizes championships in various weight divisions. *See id.* ¶ 14. These rules also require the

WBO to rank professional boxers in each weight division. *Id.* ¶ 15. Pursuant to the WBO Regulations, attached as Exhibit B to Mr. Trout's Complaint, the WBO uses these rankings to determine which boxers will have an opportunity to fight for each WBO championship. *Id.*

After discussions with and approval by the WBO, Mr. Trout entered the WBO's rankings as the ninth-ranked junior middleweight boxer in November 2014, giving up other potential prospects and career paths as a result. *Id.* ¶ 27. Following a number of victories, Mr. Trout rose steadily through the WBO's rankings, peaking as the WBO's fourth-ranked junior middleweight boxer by June 2015. *Id.* ¶¶ 28-29.

The WBO's Junior Middleweight World Championship was declared vacant on July 31, 2015. *See id.* ¶¶ 31-33 and Ex. G. Under its Regulations, the WBO was supposed to provide an opportunity for the two best available contenders to negotiate to fight for the vacant title. *Id.* ¶ 33. Because the two top-ranked contenders in the WBO's Junior Middleweight division were unavailable for a championship fight at the time, Mr. Trout would have qualified as one of the two best available contenders on the basis of his June 2015 ranking. *Id.* ¶¶ 34-36. Instead of awarding him this valuable opportunity, the WBO completely removed him from its Junior Middleweight Rankings for July and August 2015, despite that he had not lost a fight during his time as a WBO-ranked boxer. *See id.* ¶ 37. The WBO instead improperly elevated Liam "Beefy" Smith to the fourth-ranked and third-ranked positions, in the respective monthly rankings, and granted Mr. Smith a championship fight with John Thompson. *See id.* ¶¶ 37-41. Mr. Trout did not reenter the WBO's Junior Middleweight Rankings until September 2015. *Id.* ¶ 39. Mr. Trout asserts that "the WBO disregarded its rules and regulations in exchange for financial payments from English promoter Frank Warren, whose financial clout" induced the WBO to "prevent Mr. Trout from obtaining a deserved title fight." *Id.* ¶ 41.

## II.   PROCEDURAL BACKGROUND

Mr. Trout brought suit in the Third Judicial District Court for the State of New Mexico on November 16, 2015, alleging claims of violation of the New Mexico Unfair Trade Practices Act (Count I), Fraud (Count II), and a Petition for Injunctive Relief (Count III). *Id.* ¶¶ 43-69. In addition to various forms of damages, Plaintiff sought appointment of a Special Master to oversee the operation of the WBO and its related entities to ensure it operated in compliance with law and its Constitution, Regulations, and By-laws. *See id.* ¶¶ 64-67, 69. The WBO subsequently removed the case. Notice of Removal, ECF No. 1

On February 12, 2016, the WBO filed a motion to dismiss for improper venue under Rule 12(b)(3), contending that a forum selection clause in its WBO Regulations required this Court to dismiss Plaintiff's action. Following briefing, on August 3, 2016, the Court denied the motion to dismiss based on a recent Supreme Court decision explicitly holding that motions under Rule 12(b)(3) are improper procedural mechanisms for the enforcement of forum selection clauses. *See* Mem. Op. And Order 7-8, ECF No. 9 (citing *Atlantic Marine Constr. Co., Inc. v. U. S. Dist. Court*, ––– U.S. ––––, 134 S.Ct. 568, 575-579 (2013)). After determining that venue is proper in this Court under 28 U.S.C. § 1441, this Court explained the grounds for why a motion to transfer under § 1404 is the proper mechanism for enforcement of a forum selection clause. *See id.* at 8-9. Because neither party had addressed the relevant private and public interest factors that the Court must consider in deciding a § 1404 transfer, nor had they conducted a conflict-of-law analysis to establish which law applied in determining whether the forum selection clause was valid and binding on the parties, the Court requested the parties brief these issues. *See id.* at 11-12.

Defendant responded by filing its Amended Motion for Transfer of Venue to the District of Puerto Rico under § 1404(a) (ECF No. 11). Defendant contends the forum selection clause is

valid and enforceable and requires Plaintiff to litigate his claims, which arise out of and are inextricably linked to the Regulations, in the District of Puerto Rico. Def.'s Am. Mot. 2, ECF No. 11. Defendant asserts that, because Plaintiff has invoked the Regulations to support his position, he cannot now ignore the forum selection clause. *Id.* at 5. The WBO additionally argues that Mr. Trout cannot meet his burden of establishing extraordinary circumstances to overcome the enforceability of the mandatory forum selection clause, because the interests-of-justice factor favors litigation in the District of Puerto Rico where the court will be familiar with the applicable law, where the events underlying the dispute arose, where the majority of evidence and witnesses are located, and which has a less congested docket than this Court. *See id.* at 6-11. Finally, Defendant contends that, even if the forum selection clause is not valid, the Court should transfer the action for convenience, efficiency, and the interests of justice. *See id.* at 11-14.

In response, Plaintiff argues that the purported contract lacks mutuality to support enforcement of the forum selection clause and is illusory because the WBO Regulations permit the WBO unilaterally to amend its regulations at any time. Pl.'s Resp. to Def.'s Am. Mot. 1-2, ECF No. 12. Plaintiff incorporates the arguments and authorities he set forth in his Response to the Motion to Dismiss for Improper Venue. *Id.* at 1. Plaintiff additionally asserts that the forum selection clause should not apply to a fraudulent scheme that occurred while the alleged contract was not in force. *Id.* at 2. Plaintiff contends that when the WBO removed Mr. Trout from the rankings, it undertook a fraudulent scheme that removed him from the scope of the purported contract, and thus, the WBO cannot seek the protections of the contract it intentionally abdicated. *See id.* Plaintiff acknowledges that the injunctive relief he seeks is "so intrinsically intertwined with application of the Regulations in question that Plaintiff would agree that this individual claim would be more properly subject to litigation in the District of Puerto Rico." *Id.* Plaintiff

4

therefore "would agree to transfer and/or a stipulated dismissal of this particular cause of action." *Id.* at 3. Plaintiff asserts that venue of the fraud and unfair trade practices act claim should be in New Mexico because the balance of factors favors Plaintiff's choice of forum. *See id.* at 3-6.

Although Defendant did not file a reply brief, the motion is ready for the Court's decision. Notice of Completion of Briefing, ECF No. 13. Because Plaintiff expressly incorporated his response to the motion to dismiss, the Court has considered Plaintiff's response to the motion to dismiss (ECF No. 6), Defendant's reply in support of its motion to dismiss (ECF No. 7), Defendant's amended motion to transfer (ECF No. 11), and Plaintiff's response to the amended motion to transfer (ECF No. 12).

**III.   STANDARD**

The appropriate mechanism for enforcement of a forum selection clause that provides for suit in a federal forum is a motion for transfer under 28 U.S.C. § 1404(a). *See Atlantic Marine*, 134 S.Ct. at 575, 579-81. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

Generally, the movant bringing a motion for transfer under § 1404(a) "bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). In deciding whether the movant has met this burden, a district court ordinarily evaluates both private interests of the parties and public-interest considerations. *Atlantic Marine*, 134 S.Ct. at 581 & n.6. Among the factors a district court should consider when ruling on a § 1404(a) motion are

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of

> witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

In contrast, when a § 1404(a) motion is based on a "contractually valid" forum selection clause, the motion to transfer should be granted absent "extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 134 S.Ct. at 581 & n.5. "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (internal quotations omitted). When a plaintiff has agreed in a contract to bring suit in a specific forum, the plaintiff's choice of forum merits no weight and the plaintiff bears the burden of establishing why the court should not transfer the case to the initial choice of forum set forth in the contract. *Id.* at 581-82. Moreover, a court should not consider private interest factors when the parties agreed to a valid forum-selection clause, because any inconvenience to the parties should have been clearly foreseeable at the time they agreed to the forum. *Id.* at 582. Instead, when evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause, the court may only consider arguments about public-interest factors. *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

### IV. ANALYSIS

#### A. Choice of Law

Federal law governs whether to give effect to the parties' forum-selection clause and whether transfer is appropriate under Section 1404(a). *Stewart Organization, Inc. v. Ricoh Corp.*,

487 U.S. 22, 32 (1988). Moreover, Puerto Rico has adopted federal law when interpreting forum-selection clauses. *See Unisys Puerto Rico v. Ramallo Brothers Printing, Inc.*, 128 D.P.R. 842, 856-57 (P.R. 1991) (applying federal law when determining enforceability of forum selection clause). Both parties cite federal law in their briefs and agree there is no conflict between Puerto Rico and New Mexico law regarding general principles regarding forum selection clauses. *See* Def.'s Am. Mot. 3, ECF No. 11 ("Although the Puerto Rican standard should be used to evaluate the Contract Venue Provision due to Regulations' choice-of-law clause, there is no difference between Puerto Rican and New Mexican law on the subject. Both have adopted federal law governing venue-selection clauses, which should be applied to interpret the Contract Venue Provision …."); Pl.'s Resp. 1, ECF No. 12 ("Plaintiff agrees with Defendant that there does not appear to be a conflict between New Mexico law and Puerto Rico as to the general principles regarding forum selection clauses."). *See also Mueller v. Sample*, 2004-NMCA-075, ¶ 10, 135 N.M. 748 (citing federal law regarding enforceability of forum selection clause). Consequently, the Court will apply federal law to determine the enforceability of the forum selection clause.[1]

### B. Whether the Forum Selection Clause is Valid and Enforceable

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). The Tenth Circuit "will enforce a mandatory forum selection clause unless the party challenging it 'clearly show[s] that

---

[1] In the context of international forum-selection clause cases, the Tenth Circuit has distinguished between determining the enforceability of a forum selection clause under federal law and using the law of the forum selected under a choice-of-law provision in the contract to interpret the meaning of the forum selection clause. *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006) ("If the parties to an international contract agree on a forum-selection clause that has a particular meaning under the law of a specific jurisdiction, and the parties agree that the contract is to be interpreted under the law of that jurisdiction, then respect for the parties' autonomy and the demands of predictability in international transactions require courts to give effect to the meaning of the forum-selection clause under the chosen law, at least absent special circumstances…."). Given that Defendant asserts that Puerto Rico has adopted federal law, the Court will apply federal law to questions of enforcement and interpretation of the forum selection clause.

enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (quoting *M/S Bremen*, 407 U.S. at 15). *See also Mueller*, 2004-NMCA-075, ¶ 11 (stating that forum selection clauses with mandatory language will be enforced); *Unisys Puerto Rico*, 128 D.P.R. at 857 (stating that forum selection clauses are prima facie valid and enforceable unless the opposing party meets its heavy burden to show unreasonableness under the circumstances). A forum selection clause is mandatory if it contains clear language that jurisdiction is proper only in the specified forum; it is permissive if it authorizes jurisdiction in a specified forum, but does not prohibit litigation elsewhere. *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002).

Section 35(d) of the WBO Regulations contains the relevant forum selection clause (hereinafter "the Contract Venue Provision"):

> These Regulations are to be interpreted in conformity with the Laws of the Commonwealth of Puerto Rico. All WBO Participants agree and consent that the exclusive venue for any or all action in which the WBO is made a party, whether it is to enforce, interpret, or declare the application of these Regulations or to appeal from any determination of the WBO, including, but not limited to a determination of the Complaints and Grievance Committee, may be maintained only in the Superior Court of the Commonwealth of Puerto Rico, or, if applicable, in the U.S. District Court for the District of Puerto Rico.

Compl. Ex. B § 35(d), ECF No. 1-2, at 41. Defendant argues the Contract Venue Provision is mandatory and must be enforced.

Plaintiff does not dispute that this case could have been brought in Puerto Rico or that the Contract Venue Provision contains mandatory language regarding venue. Instead, Plaintiff asserts that the provision (1) is unenforceable for lack of mutuality and consideration, and (2) does not apply to his fraud and unfair trade practices claims because they arose at a time when Plaintiff did not meet the definition of a "WBO Participant."

8

### 1. Whether the Contract Venue Provision is unenforceable because the Regulations are illusory

Section 36 of the WBO Regulations ("the Amendment Provision") provides:

> The World Championships Regulations may be amended at any time, with respect to any aspect, through an exception or special case, provided the amendment is approved by the majority vote of the World Championship Committee and the Executive Committee. If any of these Rules are determined to be unenforceable, the balance of these Rules shall remain in full force and effect.

Compl. Ex. B § 36, ECF No. 1-2 at 42 of 84. Both the World Championship Committee and the Executive Committee are bodies within the WBO's administrative structure. Compl. Ex. A, at 4-5, ECF No. 1-2.

The Tenth Circuit has held, in the arbitration context, that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or scope is illusory." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002). Arbitration agreements are considered a specialized kind of forum selection clause. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Plaintiff therefore contends based on *Dumais* (as well as New Mexico law) that the WBO's unilateral right to alter its Regulations makes the Regulations illusory and lacking in consideration and mutuality of obligation.

Defendant does not specifically dispute that the Amendment Provision gives the WBO the unfettered, unilateral right to change the WBO Regulations. Nor does Defendant argue that Section 36 does not create an illusory contract. Instead, Defendant asserts that, because Plaintiff has based his substantive claims on certain provisions of the WBO Regulations, he is estopped from arguing that the Contract Venue Provision is illusory for lack of consideration. *See* Def.'s Reply 3-5, ECF No. 7.

Defendant contends that the cases upon which Plaintiff relies are distinguishable because in none of the cases was the party seeking to enforce certain provisions of an agreement while at

9

the same time arguing that other provisions of the same agreement are invalid. Defendant argues that *Dumais* is inapposite because there the plaintiff brought discrimination and tort claims that did not depend on any rights conferred to her under the agreement. *See Dumais*, 299 F.3d at 1217-18 (describing discrimination and tort claims). The Court does not agree that *Dumais* is wholly inapposite, as its holding regarding illusory arbitration agreements informs the issue here as to whether Section 36 gives the WBO the unilateral right to alter the contract and whether the contract is illusory. The Court, however, agrees that *Dumais* does not address Defendant's estoppel argument, and the Court must look to equitable estoppel authority.

"Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (internal quotation omitted). At the heart of any equitable estoppel argument is fairness. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012).

In support of its equitable estoppel theory, Defendant relies on *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004); *International Paper Co.*, 206 F.3d at 417-18; and *Hughes Masonry Co. v. Greater Clark County School Building Corporation*, 659 F.2d 836, 839 (7th Cir. 1981). In *Washington Mutual*, the Fifth Circuit stated that the doctrine of equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well." *Washington Mut.*, 364 F.3d at 267. The Fifth Circuit held the equitable estoppel doctrine prevented the non-signatory to the contract from avoiding the arbitration agreement signed by her husband where she was suing based upon one part of the transaction that she asserted granted her rights while trying to avoid other parts of the same transaction – the arbitration agreement she viewed as a

10

burden. *Id.* at 267-68. Similarly, the Fourth Circuit held that a non-signatory to a contract was estopped from refusing to arbitrate its dispute because the non-signatory's entire case hinged on its asserted rights under the contract. *See International Paper Co.*, 206 F.3d at 418 (stating that equitable estoppel doctrine in arbitration context "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him"). *See also Hughes Masonry*, 659 F.2d at 838-39 (holding party was equitably estopped from avoiding arbitration where its tort claims were fundamentally grounded in non-signatory's alleged breach of obligations assigned to it in agreement that contained arbitration clause and stating that plaintiff cannot rely on contract when it works to its advantage and repudiate it when it works to its disadvantage).

Plaintiff seeks redress here for having been denied benefits guaranteed him in the Regulations containing the forum selection clause. In Count III, Plaintiff explicitly seeks injunctive relief, among other things, "to ensure that the WBO permanently maintain and enforce its Constitution, Regulation and Bylaws substantially in the same form as they currently exist." Compl. ¶ 65, ECF No. 1-2. Plaintiff admits that this "claim is so intrinsically intertwined with application of the Regulations in question that Plaintiff would agree that this individual claim would be more properly subject to litigation in the District of Puerto Rico." Pl.'s Resp. to Am. Mot. 2, ECF No. 12. Based in part on this admission, Plaintiff states in his response that he "would agree to transfer and/or a stipulated dismissal" of Count III, his Petition for Injunctive Relief. *Id.* at 3. The relief requested in Count III, however, is tied to the merits of claims that Plaintiff does not want transferred. For reasons of judicial efficiency, the same court should hear all claims. As for dismissal of Count III, Plaintiff has yet to move to dismiss the claim, so the

Court will consider Defendant's equitable estoppel argument based on the status of the case as it currently exists, with all three claims. The Court finds that Count III is intrinsically intertwined with application of the Regulations, and therefore, the doctrine of equitable estoppel prevents Mr. Trout from enforcing through injunctive relief provisions of the Regulations that benefit him while simultaneously attempting to avoid provisions that burden him. *See Washington Mut.*, 364 F.3d at 267.

Moreover, even if Plaintiff dismissed Count III and the Court did not consider it in its analysis of the motion to transfer, Mr. Trout's fraud and unfair trade practices claims also rely on the language of the Regulations. *See*, *e.g.*, Compl. ¶¶ 13-15 ("The WBO has a Constitution, By-Laws, and Regulations that ostensibly govern its practices as a boxing sanctioning organization. Pursuant to the rules established by these governing bodies, the WBO recognizes champions in numerous weight classes in professional boxing. Also pursuant to these rules and regulations, the WBO ranks professional boxers in each weight division. These rankings determine who has the ability to fight for the WBO title according to its Regulations."), ¶ 33 ("pursuant to its Regulations, the WBO was supposed to provide an opportunity for the two best available contenders to negotiate to fight for the vacant title"), ¶ 41 ("[T]he WBO disregarded its rules and regulations in exchange for financial payments from English promoter Frank Warren, whose financial clout was such that the WBO fraudulently showed no regard whatsoever for its own rules, regulations, or any form of ethics to prevent Mr. Trout from obtaining a deserved title fight."), ¶ 51 ("The WBO has solicited and accepted financial remuneration from promoters and/or managers to fix ratings to give[] certain boxers an opportunity to fight for a title that its regulations would not otherwise allow."), ECF No. 1-2. Mr. Trout attached the WBO's Constitution and Regulations to his own Complaint. *See id.*, Ex. A & B.

The doctrine of equitable estoppel applies because Plaintiff seeks to avoid enforcement of the forum-selection clause within the Regulations, but on the other hand relies on other terms and benefits under the Regulations he alleges he should have received, but was denied. *Cf. Jacks v. CMH Homes*, Inc., 856 F.3d 1301, 1306 (10th Cir. 2017) ("Under 'direct-benefit estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes.") (citing Texas law); *Bahamas Sales*, 701 F.3d at 1344-45 (explaining that equitable estoppel applies to require enforcement of forum-selection clause in contract where plaintiff's common law fraud claim was based on defendants' alleged failure to meet duty set forth in contract, but it does not apply where a claim does not rely on terms of contract to impose liability on defendant) (distinguishing *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242 (11th Cir. 2011)).

Plaintiff's reliance on *Armco, Inc. v. North Atlantic Insurance Company, Ltd.*, 68 F.Supp.2d 330 (S.D.N.Y. 1999), is unavailing. In *Armco*, the alleged fraud and conspiracy was a scheme that included numerous pre-contract activities of defendants of which signing the contract was but a part. *See id.* at 338-39. In contrast, here the alleged fraud and unfair trade practices occurred after Mr. Trout had discussions with and approval by the WBO to enter its rankings and after he began participating in WBO-sanctioned fights. *See* Compl. ¶¶ 27-41, ECF No. 1-2. He thus received certain benefits of the Regulations through his performance under them prior to the alleged fraud and unfair trade practices in this case. Equitable estoppel applies because Mr. Trout accepted benefits from the Regulations and his claims rely on terms of the Regulations in which the forum selection clause is a part. *Cf. Rachal v. Reitz*, 403 S.W.3d 840, 847-48 (Tex. Sup. Ct. 2013) (holding that doctrine of direct benefits estoppel applies to bar Reitz's claim that the arbitration provision in trust is invalid where beneficiary accepted benefits

of trust and sued to enforce its terms against the trustee so as to recover damages and explaining that valid underlying contract is not required under equitable estoppel theories).

### 2. Whether Plaintiff was a WBO Participant

Plaintiff additionally argues that his claims are not subject to the Contract Venue Provision because, when the WBO chose to drop Plaintiff from the WBO rankings, he was not a "WBO Participant" within the meaning of the clause. Defendant asserts that Plaintiff's entire case is based on his status as a WBO Participant because he alleges the WBO failed to perform according to the Regulations when it dropped Mr. Trout from the rankings and caused him to lose a potentially lucrative fight. Defendant argues that Mr. Trout was a WBO Participant because he was a "person … who participates in any WBO activity."

The Contract Venue Provision applies to "[a]ll WBO Participants." Under Section 35(f),

> The term WBO Participant includes *any and all person or company who participates in any WBO activity*, including, but not limited to any and all current or former WBO World Champions, WBO Regional Champions, or WBO Zone Champions; WBO World Championship contenders or WBO Regional Championship contenders, or WBO Zone Championship contenders; all WBO World, Regional or Zone ranked or rated boxers; Manager and/or Promoters of any of the foregoing; all WBO Members, and all WBO Officials…. *All WBO Participants who participate in any WBO sanctioned activity do so on the express condition that such WBO Participant is bound by and subject to these WBO World Championship Rules and all WBO Rules and Regulations*.

Compl. Ex. B § 35(f), ECF No. 1-2 at 41 of 84 (italics added).

The Court need not decide whether Mr. Trout was a "WBO Participant" at the time the events in question arose, because the same equitable estoppel principles described above preclude Mr. Trout from avoiding the burdens imposed by the Regulations when he simultaneously asserts that he is entitled to benefits of other provisions of the Regulations. Plaintiff's claims are all based on the premise that he was a WBO Participant entitled to certain rights under the Regulations, to wit, the title fight opportunity in a WBO-sanctioned event. This

14

situation is similar to the cases that relied on equitable estoppel to preclude a non-signatory from avoiding an arbitration clause when that party's case hinged on asserted rights under the contract containing the arbitration clause and the party received a direct benefit from that contract. *See*, *e.g.*, *International Paper*, 206 F.3d at 417-18.

### 3. The Contract Venue Provision should be Enforced

Given that Mr. Trout is relying on language of the Regulations for his claims in Count I and II and he is seeking enforcement of the Regulations through his Petition for Injunctive Relief in Count III, he has not shown that it would be otherwise unjust or unreasonable to enforce the mandatory forum-selection clause against him. For all the foregoing reasons, Plaintiff has not met his burden to show that he should not be bound by the Contract Venue provision.

### C. Balancing of Convenience Factors

In light of the Court's determination that equitable estoppel principles compel the enforcement of the forum selection clause against Mr. Trout for the claims in this case, the motion to transfer should be granted absent "extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 134 S.Ct. at 581 & n.5. Plaintiff therefore bears the burden of establishing that the Court should not transfer the case to the initial choice of forum set forth in the Regulations based only on public-interest factors, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.5 & n.6.

Plaintiff argues that court congestion favors New Mexico, noting that the number of pending cases in New Mexico is 478 per judgeship, compared to 636 in Puerto Rico. *See* Table N/A—U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics

(June 30, 2016), http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1. When considering weighted filings, however, New Mexico has 695, compared to Puerto Rico's 543. *Id.* The median time in months between filing to trial for civil cases is nearly the same: 27.4 for New Mexico and 27.3 for Puerto Rico. *Id.* Based on these statistics, Plaintiff has not shown that the court-congestion factor weighs in favor of transfer.

As for the second factor, both forums have a local interest because Mr. Trout is a resident of New Mexico, while the WBO is a corporation that resides in Puerto Rico. The strength of the local interest, however, favors Puerto Rico. Mr. Trout's Petition for Injunctive Relief seeks to have a court oversee the WBO's operations to ensure adherence to the WBO's Rules and Regulations, and the WBO's principal place of business is Puerto Rico. The WBO's President resides in and is a citizen of Puerto Rico and some of the WBO employees with firsthand knowledge of services relating to boxers' ratings, rankings, and championships are located in Puerto Rico. *See* Declaration of Francisco Valcarcel ¶¶ 2-7, ECF No. 11-2. The Chairman of the WBO Ratings Committee who oversaw the WBO's rankings process during the times relevant to Mr. Trout's Complaint likewise is a resident and citizen of Puerto Rico. Declaration of Luis A. Perez, ¶¶ 3-7, ECF No. 11-3. Finally, the Chairman of the WBO Championship Committee, who has firsthand knowledge of the facts alleged in the Complaint, is a resident and citizen of Puerto Rico. Declaration of Luis Batista-Salas, ¶¶ 3-6, ECF No. 11-4. Consequently, the local-interest factor weighs in favor of adjudication in Puerto Rico.

The third factor – which forum is at home with the law – is neutral. The WBO Regulations that Plaintiff seeks to enforce in Count III contain a choice-of-law provision: "These Regulations are to be interpreted in conformity with the Laws of the Commonwealth of Puerto Rico." Compl. Ex. B § 35(d), ECF No. 1-2, at 41. As discussed above, equitable estoppel

principles compel enforcement of the choice-of-law provision in this case, regardless of the illusory nature of the Regulations. In *Atlantic Marine*, the Supreme Court clarified that the "court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Atlantic Marine*, 134 S.Ct. at 583. Puerto Rican law should therefore apply regarding questions of interpretation of the Regulations. *See id.*; *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 7, 144 N.M. 464 ("New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."). *Cf. Towantic Energy, L.L.C. v. General Elec. Co.*, No. C 04-00446 JF, 2004 WL 1737254, at *5 (N.D. Cal. Aug. 2, 2004) (unpublished) (explaining that choice of law provision that "*Contract of Sale* shall be construed and interpreted in accordance with the Laws of the State of New York" governed interpretation and construction of contract) (emphasis in original).

Count I, however, is a claim under the New Mexico Unfair Practices Act, and Plaintiff argues that New Mexico is the forum at home with this statutory claim. The choice-of-law clause in the Regulations does not necessarily bar non-contractual causes of action under the laws of another state. *Cf. Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (and cases cited therein) ("[T]he choice-of-law provision in the parties' mortgage document stated only that '[t]his Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.' We see no way such language can be read broadly enough to apply to fraudulent misrepresentation. Thus, the district court properly looked to the jurisprudence of New York to determine the body of law properly applicable to the present controversy."). Consequently, New Mexico courts may also be at home with some of the law in this case.

The Court need not definitely resolve whether New Mexico law applies, because even if

New Mexico law did, Plaintiff has not shown that the balance of the public interest factors weighs so strongly in favor of New Mexico to amount to the "extraordinary circumstances" necessary to overcome the forum-selection clause. The litigation of this case in Puerto Rico is not so inconvenient as to foreclose a remedy to Mr. Trout. Accordingly, transfer of this case to the District of Puerto Rico is just and proper.

**IT IS THEREFORE ORDERED** that

1. Defendant's Amended Motion for Transfer of Venue to the District of Puerto Rico (**ECF No. 11**) is **GRANTED**.

2. The Court orders the Clerk of the Court to transfer this case to the United States District Court for the District of Puerto Rico under 28 U.S.C. § 1404(a).

_____
**UNITED STATES DISTRICT JUDGE**