**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **AUSTIN TROUT,** | |
| **Plaintiff,** | |
| v. | **CIVIL NO. 17-1953 (PAD)** |
| **ORGANIZACIÓN MUNDIAL DE BOXEO, INC.,** | |
| **Defendant.** | |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

The First Circuit has tasked the court with: (1) determining whether the arbitrator-selection provision of an arbitration agreement is severable from the remainder of the agreement, so that the agreement may be enforced and arbitration ultimately compelled; and, if so; (2) selecting the arbitrators to adjudicate plaintiff's claims. For the reasons explained below, the arbitrator-selection provision is severable and plaintiff's claims must be submitted to arbitration.

**I.   BACKGROUND**

**A. District Court**

Plaintiff, a boxer, sued defendant, a boxing organization, under the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6309(d) ("MABRA"), and for breach of contract, fraud, and negligence under Puerto Rico law (Docket No. 28). He seeks redress for defendant's decision to remove him from its junior middleweight class rankings, which allegedly cost him the opportunity to fight for the world championship title for that weight class. Id. Defendant moved to compel plaintiff to arbitrate his claims under the mandatory arbitration clause included in the World Boxing

Organization's ("WBO")[1] "Regulations of World Championship Contests" (the "Championship Regulations"), and according to the "WBO Appeal Regulations" (the "Appeal Regulations"), to which plaintiff was bound as a member of that organization (Docket Nos. 27; 28; 38; 40-1, p. 32; and 40-3).[2]  Plaintiff opposed, arguing that: (1) the forum-selection clause of the Championship Regulations overrode the terms of the arbitration clause, thus requiring Puerto Rico courts or this court to entertain his claims; (2) the Championship Regulations were an adhesion contract, requiring ambiguous terms to be resolved against defendant; (3) defendant waived the right to compel arbitration by engaging in discovery and motion practice at the District Court level; (4) the federal claims could not be arbitrated because MABRA provided for actions brought thereunder to be filed in federal or state courts; and (5) his claims should not be subject to arbitration because that process would be inherently unfair, given that defendant had sole discretion to elect the members of the "Grievance Committee" (that is, the panel of arbitrators that would hear his claims), making defendant both a party and factfinder in arbitration (Docket No. 40).  The court

---

[1] "World Boxing Organization" is the English translation of "Organización Mundial de Boxeo."

[2] As relevant, Section 35(e) of the Championship Regulations reads:

> All WBO participants acknowledge and agree that the mandatory resort to the WBO Appeals Regulation is the sole and exclusive remedy for any claim, appeal, grievance or contest that arises from any right or status that is or could be subject to these Regulations or which results or could result from or relate to the interpretation or application of these Regulations.  These WBO Grievance Committee determinations are Arbitrations within the contemplation of the Arbitration Law of Puerto Rico, 32 LPRA Section 3201 et seq. and the US Arbitration Act, Title 9 of the United States Code and the Inter-American Convention on International Commercial Arbitration of July 30, 1975 and the Convention on the Recognition and Enforcement of Foreign Arbitration Awards of June 10, 1958.  All WBO participants stipulate and agree that the nature of the sport requires a prompt, final and uniform resolution of all disputes concerning application of these Regulations by a tribunal experienced with the application of these Regulations and with special knowledge and experience in world championship professional boxing.

(Docket No. 40-1, p. 32, ¶ 35(e)).

rejected plaintiff's arguments and ordered the parties to arbitrate, dismissing plaintiff's claims without prejudice (Docket Nos. 71 and 72).

### B. Appeal

Plaintiff appealed to the First Circuit (Docket No. 82), which reviewed plaintiff's arguments and rejected most of them, except for the challenge that the arbitrator-selection provision in the Appeal Regulations is unconscionable under Puerto Rico law. See, Trout v. Organización Mundial de Boxeo, Inc., 965 F.3d 71 (1st Cir. 2020).[3] The First Circuit agreed that such provision was unconscionable, and therefore unenforceable, because it allowed defendant to have virtually unfettered discretion to select the arbitrators who would hear plaintiff's claims – who could well be under the control or influence of defendant itself– and as such, they would be inherently and impermissibly biased. Id. at 78-81.[4] Accordingly, the First Circuit ruled that arbitration could not proceed under those parameters. Id. at 81.

---

[3] The arbitrator-selection provision can be found in Articles 1 and 2 of the Appeal Regulations, and read as follows:

> Three persons designated by the President will constitute the WBO Grievance Committee. They shall not be members of the Executive Committee. The Members of the Grievance Committee shall be nominated by the President and confirmed by the Executive Committee.
>
> Of the three members of the Committee, one designated by the President will exercise the function of Chairman. The Chairman and all other members of the Committee have indeterminate terms and, and [sic] are subject to replacement by the nomination of the President of the WBO and confirmation of their replacement by the Executive Committee.

(Docket No. 40-3, p. 1, ¶¶ 1-2).

[4] The First Circuit observed the Appeal Regulations provide that "the Grievance Committee shall act as a fair and independent arbitrator arising out of WBO Participation and it shall conduct all of its proceedings as Amiable Compositeur, *Ex Aequo et Bono*." Trout, 965 F.3d at 74; Appeal Regulations, Art. 4 (Docket No. 40-3, p. 2). But, despite the mandate that the Grievance Committee act as a fair and independent arbitrator, the First Circuit concluded that this alone did not solve the greater problem that defendant enjoys exclusive discretion to appoint the arbitrators, who in turn could be under the direct control of its president, and that anyone so chosen would not be able to act impartially. Trout, 965 F.3d at 81.

Notwithstanding, the First Circuit pointed out that the Championship Regulations included a savings clause,[5] and mentioned the possibility that the clause could function to sever the arbitrator-selection provision in the Appeal Regulations, saving the remainder of the terms of the arbitration agreement. Id. at 82. If so, arbitration could move forward. Id. And, to fill the gap created from the severed arbitrator-selection terms, the First Circuit considered the prospect that this court select the arbitrators –pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5– that would adjudicate plaintiff's claims. Trout, 965 F.3d at 82. The First Circuit left those questions for this court to answer, and remanded the case for further proceedings. Id.

### C. Remand

On remand, the court ordered the parties to file a joint motion with their recommendations as to the next steps in the case (Docket No. 90). The parties complied (Docket No. 91) and, in accordance with their recommendations, the court asked them to file separate but simultaneous briefs discussing whether the arbitrator-selection provision in the Appeal Regulations was severable from the arbitration agreement (Docket No. 92).[6] The parties submitted their briefs (Docket Nos. 93 and 94), their responses (Docket Nos. 100 and 101), and their replies (Docket Nos. 108 and 109).[7]

---

[5] The savings clause is found in Section 36 of the Championship Regulations, which states: "[i]f any of these Rules are determined to be unenforceable, the balance of these Rules shall remain in full force and effect" (Docket No. 40-1, p. 33).

[6] The parties' appellate briefs did not elaborate on the possible severability of the invalid arbitrator-selection provision. Trout, 965 F.3d at 82.

[7] Plaintiff sought leave to file an amicus curiae brief from law professor Imre S. Szalai, author of a law review article referred to in plaintiff's brief (see, Docket Nos. 94; 94-3; 102), which the court granted (Docket No. 103). Plaintiff submitted the brief (Docket No. 104), and defendant responded (Docket No. 107). Prof. Szalai essentially argues that the Appeal Regulations frustrate plaintiff's ability to have his MABRA claims heard, and that the FAA does not allow courts to sever unconscionable terms from an agreement to arbitrate (Docket No. 104). In his reply, plaintiff rehashed the same arguments (Docket No. 109). But, the First Circuit rejected plaintiff's argument that he cannot vindicate its rights under MABRA in arbitration. See, Trout, 965 F.3d at 78. So, that contention must be disregarded. See, U.S.

## II.     DISCUSSION

### A.  Severability

Section 2 of the FAA provides that: "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987)(highlighting that arbitration agreements are valid, irrevocable, and enforceable as a matter of federal law).  The "practical effect of [Section] 2 . . . is to ensure that arbitration agreements are treated no differently than any other private contractual agreements . . . ."  Dean Witter Reynolds, Inc. v. Sánchez Espada, 959 F.Supp.73, 78 (D.P.R. 1997).  Accordingly, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  Perry, 482 U.S. at 492 n. 9 (emphasis omitted); Colón De Sánchez v. Morgan Stanley Dean Witter, 376 F.Supp.2d 132, 136 n. 3 (D.P.R. 2005)(noting that under the FAA, "the validity and enforceability of arbitration agreements are still matters of state contract law").  Courts must not construe arbitration agreements "in a manner different from that in which it otherwise construes nonarbitration agreements under state law."  Perry, 482 U.S. at 492 n. 9.[8]

---

v. Bryant, 643 F.3d 28, 33 (1st Cir. 2011)(under the "mandate rule," a district court on remand cannot "re-litigate issues decided by the appellate court on the first go-around").  As for Prof. Szalai's second argument, it must be rejected for the reasons discussed in this Opinion and Order.

[8] Plaintiff does not dispute that the Championship and Appeal Regulations are to be interpreted in accordance with the laws of Puerto Rico (see, Section 35(d) of the Championship Regulations, Docket No. 40-1, p. 32; Article 8 of the Appeal Regulations, Docket No. 40-3, p. 3; Docket No. 94, p. 9 (wherein plaintiff concedes that "[b]oth the [Championship and Appeal Regulations] make clear that all of its provisions must be interpreted pursuant to Puerto Rico law")), and acknowledges that he is bound by both sets of Regulations (Docket No. 28, pp. 4-7, 20-22, 24).

In Puerto Rico, contracting parties are free to "establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." Article 1207 of the Puerto Rico Civil Code of 1930, P.R. Laws Ann. tit. 31, § 3372. Even if a contract "is tainted with a defect or vice," however there is nonetheless a contract as long as the effectuating requisites are met. Lummus Co. v. Commonwealth Oil Ref. Co., 280 F.2d 915, 933 n. 21 (1st Cir. 1960). To that end, "civil law accepts that in some cases partial nullity may be used as a means to guarantee the continuity of a [transaction] whose fundamental content is not affected by the void portion." Farthing v. Coco Beach Resort Mgmt., LLC, 864 F.3d 39, 44 (1st Cir. 2017)(citing McCrillis v. Aut. Navieras de P.R., 23 P.R. Offic. Trans. 109, 131, 123 P.R. Dec. 113 (1989)(quotations, brackets and citations omitted).

The principle leads to severing of clauses or language within a single agreement. See, Banco Popular de Puerto Rico v. Sucn. Talavera, 174 P.R. Dec. 686, 715-716 (2008)(affirming lower court's ruling tempering derisive terms in property purchase option agreement but otherwise preserving the underlying contractual transaction); Santiago-Sepúlveda v. Esso Standard Oil Co. (Puerto Rico), Inc., 638 F.Supp.2d 193, 199-200 (D.P.R. 2009), aff'd, 643 F.3d 1 (1st Cir. 2011)(severing from franchise agreement covenants that allowed franchisor to unilaterally modify prices but otherwise holding remainder of agreement valid); Cherena v. Coors Brewing Co., 20 F.Supp.2d 282, 288-289 (1st Cir. 1998)(invalidating non-compete covenant but upholding non-disclosure clause); Jiménez v. Island Oasis Frozen Cocktail Co., Inc., 2010 WL 3719216, *7 (D.P.R. Sept. 14, 2010)(similar). For the same reason, the arbitrator-selection mechanism may be severed from the arbitration agreement.[9]

---

[9] Plaintiff argues that inclusion of the arbitrator-selection mechanism was done in bad faith, and that 9 U.S.C § 2 does not allow for severance of bad faith clauses in arbitration agreements (Docket No. 101, pp. 6-7). He relies on Perez

Relying on Arthur Young & Co. v. Vega III, 136 P.R. Dec. 157, 36 P.R. Offic. Trans. __ (1994), and PACIV, Inc. v. Pérez Rivera, 159 P.R. Dec. 523, 59 P.R. Offic. Trans. 48 (2003), plaintiff argues that the Puerto Rico Supreme Court has rejected adoption of the so-called "blue-pencil test," a judicial standard for deciding whether to invalidate the whole contract or just the offending words, in which the offending words are invalidated if it is possible to delete those words by running a blue pencil through them, as opposed to changing, adding, or rearranging words in the contract. See, blue-pencil test, Black's Law Dictionary (11th ed. 2019); Docket No. 94, pp. 9-12. On this assumption, he alleges that the Championship and Appeal Regulations: (1) are separate documents and operate independently from each other; (2) although the Championship Regulations have a savings clause (i.e., Section 36), the Appeal Regulations do not; (3) Section 36 is not extensive to the Appeal Regulations; and (4) given that the Appeal Regulations do not contain a savings clause, the First Circuit's invalidation of one of its provisions necessarily entails invalidating the entire arbitration agreement (Docket Nos. 94 and 101).

In Arthur Young, the Puerto Rico Supreme Court struck down a non-compete covenant incorporated in an employment agreement because it did not meet substantive criteria set in Puerto Rico law. See, generally, Arthur Young, 136 P.R. Dec. 157, 36 P.R. Offic. Trans. __. In turn, PACIV applied Arthur Young in a similar setting. See, generally, PACIV, 159 P.R. Dec. 523, 59 P.R. Offic. Trans. 48. Plaintiff does not argue, let alone claim, that he was an employee of defendant or that the Championship or Appeal Regulations are on par with an employment

---

v. Globe Airport Sec. Servs., Inc., 253 F.3d 1280, 1287 (11th Cir. 2001), for the proposition that courts cannot sever bad faith provisions in arbitration agreements because it would incentivize the contract drafter to include unlawful terms to deter challenges as to the enforceability of those agreements. But, the Eleventh Circuit vacated *sua sponte* its decision in Perez. See, Perez v. Globe Airport Sec. Serv., Inc., 294 F.3d 1275, 1276 (11th Cir. 2002). Further, as explained above, 9 U.S.C § 2 provides that the enforceability of arbitration agreements is the province of state law, and Puerto Rico law permits severing clauses from the underlying agreements.

agreement. As well, he has not expounded on how the rationale underlying Arthur Young extends beyond the scope of non-compete clauses in the employment context, to disputes involving arbitration agreements. In fact, the First Circuit has rejected the application of Arthur Young's rationale in the context of arbitration agreements, as Puerto Rico law's requirements concerning non-compete covenants in employment agreements "do not apply to other contract clauses." Soto v. State Indus. Products, Inc., 642 F.3d 67, 73-74 (1st Cir. 2011). And, sister courts in this District have followed the same approach. See, Cherena, 20 F.Supp.2d at 288-289 (holding that non-competition clause in employment agreement did not meet legal requirements under Arthur Young, but that the non-disclosure clause in the agreement was nonetheless valid); Jiménez, 2010 WL 3719216, at *7 (similar). Moreover, neither Arthur Young nor PACIV adopted or rejected the blue-pencil test, relying instead on Puerto Rico substantive law. Thus, under Puerto Rico law, courts have authority to sever the terms of an agreement without extinguishing the remaining obligations the parties undertook in executing the agreement.

### B. Enforceability

This conclusion brings to the forefront the question of whether the arbitration agreement may be enforced in the absence of the arbitrator-selection clause. To answer this question, the court focuses on "the parties' intent," the "[f]ederal policy favoring arbitration," and "the interplay" between that policy and state law. Trout, 965 F.3d at 82 (quoting McMullen v. Meijer, Inc., 355 F.3d 485, 495 (6th Cir. 2004)).

#### 1. Intent of the Parties

In its ruling, the First Circuit expressly recognized that Section 35(e) of the Championship Regulations embodies the parties' intent to arbitrate disputes. See, Trout, 965 F.3d at 75-76 (noting that Section 35(e) "does the useful work of a typical arbitration clause" and "identifies the matters

*that the parties have agreed* to have decided by arbitration")(emphasis added).[10]  That being so, the parties' intent, as reflected in the plain terms of the Championship Regulations, favors arbitration.[11]

2. Federal Policy

Congress enacted the FAA "[t]o overcome judicial resistance to arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-220 (1985)(noting that the purpose of the FAA is to "place an arbitration agreement upon the same footing as other contracts . . . and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate")(quotations and citations omitted).  Further, under 9 U.S.C. § 5,[12] the court may order arbitration and appoint, or allow the parties to appoint, arbitrators. See, Ruiz v. Millennium Square Residential Ass'n, 156 F.Supp.3d 176, 184 (D.D.C. 2016)(allowing parties to choose method of selecting arbitrators, but otherwise noting that court

---

[10] Defendant echoes the First Circuit's reading of Section 35(e), pointing out that in the Section the parties agreed that: (1) disputes arising from the Championship Regulations would be adjudicated under the Appeal Regulations by a forum knowledgeable and experienced in world championship professional boxing; and (2) arbitration determinations would be subject to and bound by federal and Puerto Rico arbitration legislation (Docket No. 93, pp. 6-7; Section 35(e) of the Championship Regulations, Docket No. 40-1, p. 32).

[11] Plaintiff does not advance any counterarguments as to the intent of the parties but rather responded to defendant's argument that the court should reject application of the so-called "integral test," adopted in other Circuits, which in general stands for the proposition that an "entire arbitration clause is unenforceable when one particular forum is chosen as the arbitration forum but the forum is unavailable–and that particular forum choice was 'integral' to the parties' intention to arbitrate" (Docket No. 93, pp. 13-17)(collecting cases).  But, plaintiff did not assume such position in his submissions, and even conceded that the "integral test" does not apply here (Docket No. 101, pp. 3-5).

[12] 9 U.S.C. § 5 states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

has authority under 9 U.S.C. § 5 to appoint arbitrators if the parties cannot reach consensus).[13] This is a strong policy, and it weighs in favor of arbitration.

    3. Interplay Between State Law and Federal Policy

The Puerto Rico Commercial Arbitration Act ("PRCAA"), P.R. Laws Ann. tit. 32, §§ 3201 et seq., authorizes and regulates commercial arbitration agreements and how they are enforced. See, Garrison v. Palmas Del Mar Homeowners Ass'n, Inc., 538 F.Supp.2d 468, 475 (D.P.R. 2008)(citation omitted). Under the PRCAA, parties may agree to submit their future disagreements to arbitration. See, Rivera v. Samaritano & Co. Inc., 8 P.R. Offic. Trans. 640, 643 (1979)(so noting); P.R. Laws Ann. tit. 32, § 3201. Like the FAA, the PRCAA recognizes a "strong public policy favoring the arbitration of disputes." Sears Roebuck & Co. v. Herbert H. Johnson Assoc., Inc., 325 F.Supp.1338, 1340 (D.P.R. 1971)(citations omitted); S.L.G. Méndez Acevedo v. Nieves Rivera, 179 P.R. Dec. 359 (2010)(observing that Puerto Rico policy favoring arbitration requires that "any doubts that may exist about whether or not arbitration should proceed must be resolved in favor of arbitration")(translation ours). And, the PRCAA also provides for the appointment of arbitrators by the court upon request by any of the parties. See, P.R. Laws Ann. tit. 32, § 3205 (enumerating instances in which court appointment of arbitrators is appropriate). By this measure, considering that both federal policy and Puerto Rico law favor arbitration, and even authorize judicial appointment of arbitrators, the interplay of federal policy and state law tips the scale in favor of enforcing the obligation to arbitrate plaintiff's claims.[14]

---

[13] Plaintiff does not offer developed arguments to oppose the view that federal policy favors arbitration or that appointment of arbitrators may be carried out by virtue of 9 U.S.C. § 5. See, Docket No. 101, pp. 10-11.

[14] Plaintiff intimates that the Championship Regulations and the Appeal Regulations are adhesion contracts and that any ambiguities contained therein should be interpreted in his favor (Docket No. 94, pp. 8-9). Yet, he fails to point to any ambiguous contract terms. Even if there were any ambiguities, federal and Puerto Rico policy requires that the court interpret any doubts in contractual language in favor of arbitration. See, Com. Union Ins. Co. v. Gilbane Bldg.

### C. Selection of Arbitrators

Against this backdrop, defendant suggests that the parties submit a list of qualified potential arbitrators and their qualifications for the court to consider and appoint, or alternatively, that each of the parties appoint one arbitrator of their choosing, and that those two arbitrators agree upon a third to chair the panel (Docket No. 93, p. 20).[15] In either case, defendant asks that the appointed arbitrators follow the remainder of the procedures set in the Appeal Regulations, barring Article 1. Id. at pp. 20-21. Plaintiff counters that such appointment should be made solely by the court, because, among other things, he believes that defendant's suggestion call for a 3-member panel with boxing backgrounds, and it would "circumvent the spirit of the FAA," increase costs to the parties, and allow defendant to propose biased arbitrators (Docket No. 101, pp. 9-12). Defendant replies that, if the parties are given the opportunity to meet and confer as to the selection of arbitrators, the parties would be able reach an amicable solution to this problem (Docket No. 108, p. 7).

The court will take a page from the decision in Ruiz, 156 F.Supp.3d 176, and allow the parties to confer as to the selection of the arbitrator(s). Like in Ruiz, the court is confident that the parties can reach consensus on how to go about this task and may even opt for only one arbitrator instead of three. See. Ruiz, 156 F.Supp.3d at 184 (proposing that that each party designate one arbitrator, who in turn will elect a third, but allowing the parties to discuss and choose a different

---

Co., 992 F.2d 386, 389 n. 3 (1st Cir. 1993)(so noting in federal law context)(citation omitted); S.L.G. Méndez Acevedo, 179 P.R. Dec. 359 (same under Puerto Rico law).

[15] Defendant considers that the parties could also provide a list of organizations that could assist the court in determining arbitrators to hear plaintiff's claims (Docket No. 93, p. 20).

method). Therefore, the court will grant the parties thirty days to meet and confer as to the selection of the arbitrator(s).

### III.  CONCLUSION

For the reasons stated, the arbitrator-selection mechanism is severed from the arbitration agreement. Plaintiff's claims shall be submitted to arbitration under Section 35(e) of the Championship Regulations. The parties will have thirty days from the entry of this Opinion and Order to meet and confer, in person or video teleconference, as to the selection of the arbitrator(s), and inform the court via joint motion of the results of their discussions. At that point, the court will set the next steps in the case.

**SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of March, 2023.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge